The next case is Alexandra H. v. Oxford Health. Ms. Hopkins is here for the plaintiff or the appellant, and Mr. Bernstein is here for the appellee. Thank you, Ms. Hopkins, you may begin when you're ready. Good morning, and may it please the Court, Elizabeth Hopkins on behalf of the plaintiff appellant Alexandra H. I'd like to reserve three minutes for rebuttal, please. This case is about Alexandra H., a young woman who received psychiatric treatment for her anorexia and related mental health disorders in 2011 at an intermediate partial hospitalization level of care, and who requested that her ERISA health care plan pay for this treatment. And it's also about Oxford Health Insurance, which insured and administered claims under the plan, and which refused to pay for this partial hospitalization treatment after only three weeks, just as Alexandra was starting to take the first tentative steps towards recovery. There are two issues in this appeal. The first is whether the district court properly afforded deference to Oxford's denial of plaintiff's claim for coverage as not medically necessary. And the second is whether, regardless of whether the court should have considered the claim for benefits de novo or under an abuse of discretion standard, whether her treatment was medically necessary and should have been covered under the plan. The answer to the first question is that the district court should have reviewed the claim de novo and not under a deferential standard, deferential abuse of discretion standard. The Supreme Court's decision in Firestone long ago held that a denial of ERISA benefits is to be reviewed de novo unless there's an express grant in the plan language of discretion under the terms of the plan and that exercise of discretion is, and that discretion is exercised. So if I understand your argument, and correct me if I'm wrong, you agree that the plan, that there's discretion in the language of the plan, and the question is whether that discretion is still there after there's been an external review. That's correct. The plan clearly and expressly granted sole discretion, in fact, to Oxford to make medical necessity determinations under the plan, but the plan also provided for an external review mechanism and Alexandra invoked that mechanism, which was governed by New York law, because she was dissatisfied with the denial of benefits. Decision to seek external outside review, why isn't that a simple exercise of the administrator's discretion? Why isn't the external review? If the plan administrator decides to seek outside review, it seems to me that's just an exercise of the discretion afforded to the plan administrator. The plan administrator or the claims administrator doesn't get to invoke the external review mechanism. It's the insured or the plan participant, in this case Alexandra, who got to decide whether to invoke that mechanism or not, and she was the one who did so. So it wasn't an exercise of discretion on the part of Oxford. It was her choice to do so. The plan language also says, and this is, I think, really important, that it's . . . Did the administrator, in this case, decide to be bound by the outcome of the external review? Well, the plan language required that the external review, provided that the external review was binding. Now this court, as you know, there was already an appeal in this case, and this court, during that appeal, held that under New York law, and also under ERISA, that that determination by the external reviewer wasn't binding on Alexandra as the plan participant, as the insured. She was still able to bring a federal case challenging that determination, but the court didn't address whether the determination was still binding on Oxford. And if one looks at the New York law and the New York decisions that this court cited in its prior decision, it's clear that the external review provision is binding on the insurance company, just not binding on the insured. And for that reason . . . So what's the best case that supports your review, that discretion is removed once there's external review, because we have some cases that Oxford cites in its brief, including an Eleventh Circuit opinion in Prelutsky v. Greater Georgia Life Insurance Company, which comes to the conclusion that independent binding review did not eliminate the discretion under that plan's express terms, right? We don't have a decision directly on point, but I think if you look at the Eleventh Circuit's decision in Moon, which says that discretion has to be expressly granted. If you look at the decision in Gilbertson v. the Tenth Circuit, which actually is in line with a lot of other decisions, which says that the administrator actually has to exercise, or the entity making the determination, or granted the discretion, actually has to exercise it. And if you combine that, I think, with the Firestone decision itself, and perhaps the Rush Prudential decision, that says that there's nothing in ERISA that supports a lenient standard, that that is, in fact, not the background standard. The background standard is de novo. I think you have to come to the decision, or come to the conclusion, that where as here... In all of those cases that you cited, is it true or is it not true that the court came to the conclusion that the plan administrator violated the plan procedures in making a benefits determination? It violated the plan procedures. I suppose in Gilbertson, in cases like that, the court, I'm not sure that it turned on... Well, I suppose it did. I mean, the decisions were late in those cases. That makes it different from this case, then, doesn't it? Yes. Those are different than this case. I don't think that they're directly on point, but I think the point is that the external reviewer here was not granted discretion. You only get to deferential review for a decision, such as a medical necessity decision, if the entity making the decision was expressly granted discretion under the terms of the plan. That's not what happened here. I think saying that you go to a de novo standard review is not, in any way, unfair. That's because, really, for two reasons. Because first of all, as I sort of alluded to a minute ago, the Supreme Court has repeatedly stressed that de novo is the default standard of review and that nobody's entitled to deferential review, that that's not the default. Second, presumably Oxford and not Alexandra wrote the plan language at issue here, both the plan language providing for external review and the plan language granting discretionary authority only to Oxford. It says solely to Oxford to make medical necessity determinations. Can I ask you how different these two forms of treatment actually were, the intensive outpatient and partial hospitalization? I wonder how close they are to each other, or from your perspective, how far apart? Well, obviously, they're different in terms of intensity. So this was quite a few more hours a week of treatment than intensive outpatient therapy. I believe Alexandra was getting something like 10 to 12 hours of treatment a day, at least five days a week, whereas intensive outpatient treatment is generally, I mean, it can vary, but it's generally a few days a week and only several hours a day. So it is quite a bit less intensive and many fewer hours, and much less of a structured setting. I mean, if one anxiety is the risk to the individual, I mean, isn't meeting, what would you say, three, four times a week for several hours a day likely to keep that in mind? I mean, obviously, you can change the medical necessity point at any time, right? In other words, you're doing the intensive outpatient and you decide, well, the risks have grown here and people are going to pay attention to that. Right, but you don't have to fail first in order to get an appropriate level of treatment. I wasn't suggesting fail. I didn't say that. Well, I guess what I'm suggesting is it's a lot easier to monitor someone if you're seeing them every single day for 10 to 12 hours than if you're seeing them a few times a week. And, you know, something else I would stress is that although the district court, when he looked at what the reviewing doctors for Oxford said about her, you know, beginning to be able to eat all or most of her meals, the point is she was being supervised at every single meal and was still struggling, according to her own doctors and the contemporaneous medical records, was still really struggling to eat, to finish every single meal. She was only on a 1600 calorie diet, which is not even really quite a maintenance diet, but she was struggling to eat that many calories. And you know, if you're talking about intensive outpatient treatment, she wouldn't be supervised at every single meal. And that was really important at this point. What was also important was that, you know, she had major depression, which was not stabilized, according to her doctors. Does the record show what happened after Oxford's decision? Yes, in fact, well, I'm not sure it shows everything that happened, but she finished her treatment. She went for many more months and, you know, she is recovered. She's doing really well. After many years of sort of cycling through lower level outpatient treatment and then being hospitalized, she finished this course of treatment and has gone on with her life and done quite well. She's now working as a therapist, helping other people. And really, it's been quite remarkably successful because I think she finally got the treatment that she needed. But she was only able to do this because her father was able to afford to pay for the treatment for her. And, you know, she really wanted me to stress, and I think the record supports this, that, you know, there's a very real likelihood she would have died if she hadn't gotten this treatment. She believes that. And I think her treating physicians believe that. And she thinks that, you know, many other people wouldn't have the kind of family support that she was able to have to get this treatment covered. So it's about money. It's about getting her father reimbursed for the, you know, money he had to expend for her treatment. But it's also about the treatment itself, which many people wouldn't have had access to when she chose and was able to pay out-of-pocket for. I'll sit down because I see my time is up. Thank you. All right. Thank you, Ms. Hopkins. We'll hear from Mr. Bernstein. Thank you. Good morning, and may it please the Court. My name is Michael Bernstein of Robinson-Cole. We represent the appellees in this case. I have with me Jeanine Jacobson as well. Your Honors, the district court opinion in this case should be affirmed, and that opinion granted summary judgment to Defendant Oxford on this case. The district court correctly ruled that the proper standard of review in this case is the deferential, arbitrary, and capricious standard because the plan clearly includes a grant of discretionary authority to Oxford. In fact, this court in a previous decision noted that the plan included that language and noted that it sufficiently granted discretionary authority to Oxford. The district court also correctly applied the court's six-court test to determine that Oxford's decision to deny the plaintiff appellant's claim for continuing treatment at the partial hospitalization level of care was correct. Let me go back to the previous decision from this court. As I read that opinion, the panel decided that the external reviewer's conclusion of no medical necessity did not preclude the member from filing suit, right? Yes. One holding. And also that the external reviewer's determination wasn't binding for ERISA preemption. As I read that case, well, neither of these holdings addresses whether the external review process stripped Oxford of discretion to determine eligibility for benefits because it was binding on the plan administrator. Would you, am I wrong about that? No, those are all correct summaries of the court's prior holdings. Okay. So the court did not answer the question that we're looking at today. No. In fact, the court, what had happened in the district court originally was that the district court found that because the external reviewer, in effect, rendered the final administrative decision that Oxford didn't have discretionary authority and the decision should be reviewed de novo because it was the external reviewer's decision. And according to the plan in New York state law, that decision was binding. So that was the decision that was appealed in the first appearance before this court. And what this court did is it reversed that holding and said, based upon New York state law interpreting the New York insurance statute for external review, that the word binding, and make no mistake, the statute says that the external review decision is binding on both the plan and the plan participant. And the plan echoes verbatim that language. This court held that according to New York state interpretation of that law, binding just means it's the end of the administrative process. And so the court added in a footnote, this court did, that the sort of estoppel effect, I think that was the language that was used by the court, is no longer effective because the court has ruled that binding doesn't mean that either party is bound. Right, but by the estoppel effect, the court is talking about in subsequent litigation, right? Yes. Yes. I think that was, it came up with the court, the district court having held that the external review decision is binding. And it came back to the district court saying, it's up to you, district court, to decide the issue of the proper standard of review. And I think this question is really interesting, at least as far as the plaintiff's arguments go. Because don't forget, when we were in front of this court before, plaintiff argued very strongly that the external review decision, and that decision, by the way, upheld the adverse benefit determination of Oxford, after three clinicians at Oxford had likewise come to the same conclusion. And so plaintiff Pellant argued in front of this court, unsuccessfully, that that external review determination and the record upon which it was based should not be part of the administrative record before this court. And this court said, no, that's not the law in any circuit that's considered this, and it shouldn't be the law here. And the court ruled over plaintiff's objection, plaintiff Pellant's objection, that the external review and all the records upon which it was based should be part of the record. So it's interesting now to hear that the plaintiff wants to argue, well, the external reviewer's decision was final. That was the entity that made the determination after we had a whole litigation that came up to this court to say that that wasn't the case at all. In fact, this court held that the plaintiff can't have it both ways. They were arguing that the external appeal record and the external appeal decision should only be part of the record if it overturns the adverse benefit determination. If it upholds it, then it shouldn't be. And this court held, no, you can't have it both ways. That's the exact language of the decision. But in light of the plain language that you cited, too, which tracks New York law that says the external reviewer's decision is binding, how does the administrator still have discretion after that external review? Because it still comes back. I mean, it's just an opinion. It's an opinion by the external reviewer to uphold the decision. But it's binding according to law in the language of the plan. But not according to this court's ruling. I disagree, frankly, with the plaintiff appellant's argument that this court only held that the decision is not binding on the claimant but somehow still binding on the defendant. What's sauce for the goose is sauce for the gander. We had this argument. We had a determination by this court saying that according to New York law and the appellate decisions interpreting the New York law, this kind of decision is not binding in the sense that it's binding on both sides. It means it's the end of the administrative process. So if it's not the end of the administrative process for the plaintiff and she can then bring a 502A1B lawsuit, it's the same applies to the defendant. And this argument that the plaintiff appellant is making here, it's reminiscent of the dissenting justices' opinion in Rush Prudential all the way back in 2002, which is the only Supreme Court case dealing with external review. Don't forget, that was a close decision. It was 5-4. And the dissenters held, consistent with the decision of the Fifth Circuit in corporate health, that the external review law that was being challenged was preempted by ERISA because it was adding what they called a quasi-adjudicatory arbitral process and taking the decision-making out of the hands of the claim fiduciaries. So the dissenters in Rush Prudential found that because it did that, it was preempted by ERISA. And again, that's what the Fifth Circuit held, and that was the circuit split that came up to the Supreme Court in Rush Prudential, because the Seventh Circuit had held that it wasn't preempted, that it was saved by the ERISA savings clause. So now that we're here, we have the plaintiff appellant arguing in line with the dissenters and the Fifth Circuit that somehow this, after all, is a quasi-arbitral decision, after all, and it was removed then from the claim administrator who has vested discretion to make the ultimate determination. Well, that's not even what the Supreme Court said in Rush Prudential. In Rush Prudential, the Supreme Court likened external review to asking for a second opinion. So this was another opinion, and it was another opinion, and the record shows that after it was rendered, it came back to Oxford, and Oxford acknowledged it, and because there was nothing to do at that point, they adhered to their original determination. Let's not forget, they made that original adverse benefit determination, and then they upheld it throughout the administrative appeals process. Dr. Al-Awali had denied it initially after the three weeks were approved. Just to make sure I'm following all this, I'm just worried I'm not. I just want to make sure I'm understanding your answers to Judge Pryor's question. Could Oxford reject the external review, yes or no? Theoretically, I suppose it could, but I don't think it would in practice, no. Well, what if the external review said that the services were medically necessary? Yeah. Would Oxford then deny benefits? No, I think that they would have to approve. There is an interest... Because just so we're on the same page, because it's binding. That's where the binding comes in. But your view is it's then not... It is or it isn't binding on the courts. That's the thing. I don't think it's binding on the courts, and I don't think it's because it's binding. Only because... But why... I'm just trying to simplify, not... You keep trying to make it more complicated. I'm sorry. According to my fragile mind, but if it's binding on Oxford, the external review, but after that, you then go to the courts, and we have our standard review debate, right? Well, let me be clear and try to simplify this. If binding doesn't mean binding on the parties, which is what the statute and the plan says, if we've determined that according to New York State precedent, it's the end of the binding means for both sides, not just for the claimant. Now in practice, the Oxford would have to... That theory would not let Oxford reject. So if the external review said it is medically necessary to keep the individual in partial hospitalization, you couldn't reject that, just so we're on the same page, right? Yes. Okay. And now that we decide that that's binding on the administrative process as to both parties, we go to court, what does that suggest as to standard of review? I think that the standard of review remains as it's described in the plan. Here there's a grant of discretion, and ultimately it's Oxford that makes the determination to pay or to... So Oxford has decided to delegate its discretion to somebody else, it's bound by it, but it's still discretionary, and that's why you think it should still be this discretionary view in the courts. I'm directly summarizing. I'm not trying to set you up, I'm just trying to get it. Let me just correct that a little bit. Oxford didn't delegate the discretion to the external reviewer. The state law mandates that external review be available. The plan incorporates, pretty much verbatim, the state law, in line with the ruling in So the state law delegates this discretion to external review. See, that's where I disagree. I don't think that the state law delegates discretion to the external reviewer. The state law allows the claimant to go to an objective clinician who specializes in the same area of medicine where the dispute arose, and get an opinion from that reviewer as to whether or not the medical necessity decision should be upheld. And here, that medical necessity determination was upheld. So that's an opinion on appeal. That's not a coverage determination. In the end, Oxford is the insurance company, and Oxford is making the non-coverage determination, as it did at every step along the way during the administrative review process. Let me ask you another question just so I can understand. So is the external reviewer applying the standard under the plan for medical necessity? Is the reviewer interpreting the plan in that sense? Well, I mean, he certainly had it, and he certainly reviewed it. I think that there's a general medical necessity rule that's put in front of the peer reviewers who do the external review by the external review agent that's consistent with it, not different at all from the plan's medical necessity determination. And so the district court actually went through that because that was one of the challenges that were raised below and here, and the district court correctly found that there was no meaningful distinction between the medical necessity standard that was used here. I mean, at the end of the day, all of these clinicians reviewed the records. I mean, let's make no mistake. There's no question that this was a patient that still needed treatment, and nobody was saying that once the denial of benefits was entered that she was just sort of on her own. There were clear indications in the record, and I think that they were repeated by the external review agent, that the patient should continue treatment at the intensive outpatient level of care, which is an intensive treatment, to your point earlier, Judge Sutton. So it wasn't like she was just being left to her own devices. The question was whether or not this level of care was medically necessary under the guidance. But I take it had, hypothetically, the family accepted the intensive outpatient approach, presumably because that's all they could afford, they're doing that, presumably that wasn't irreversible, right? I mean, three weeks later, the doctors could have said, we've got to go back to partial hospitalization. I mean, right? That could have happened. That's absolutely true. So let me just, I'm about to ask a different question. What seems unfair about this, or maybe that's not the right word, but it's just a little problematic from my perspective, is this is all about the money, retrospectively. We have no idea what would have happened had, you know, they accepted that, right? So now they're kind of stuck with all or nothing at all, which seems, I think, a little unfair to them. No, I don't. I disagree. You see what I'm saying? I mean, you acknowledge this was a serious problem. The record shows it's a serious problem. It doesn't strike me as implausible that had they taken this route of intensive outpatient, a couple of weeks later, she might have needed some more hospitalization. I mean, that is a pattern in this type of problem. That happens. Until, happily, it works out, God willing. Or not. I mean, eventually, that wasn't her situation. Do you understand my point? Yes. That seems a little unfair. I don't think it's unfair. I think that these are the rules of the plan and that, you know, those are the rules for coverage and they're laid out very clearly in the guidelines. I just want to make one last point. I'm almost out of time, Your Honor, if I may. I think that setting up a regime where, depending on whether or not a participant elects to go for an external review, is going to decide what the standard review is. In other words, right out of the plan, the deferential review, right out of the plan, the grant of discretion. I think that's a dangerous precedent to set because what you're basically saying is that, if one group of patients doesn't seek external review, then there's no question, that's a decision that's got to be reviewed under the arbitrary and capricious standard. But if they do, then it's not. I mean, so where is the uniformity in that? Where is the predictability in that? Where is the efficiency in that? When the Supreme Court talked about the arbitrary and capricious review and its importance in the ERISA remedial scheme in Conkright versus Frommert, you know, Chief Justice Roberts spoke about those salutary goals of predictability, efficiency, and uniformity. I know it's over, but just one question. I'm sure I'm missing something, so I want you to correct me because I'm sure you'll be able to. I've never seen, I've seen lots of these ERISA cases. I've never seen this external review component to it. So I've always seen, and when I see those cases, there's this anxiety about arbitrary and capricious review because the people in Oxford position have an incentive to say no medical necessity, right? That's the problem. No, just stick with me. I'm asking a different question. So there's this whole anxiety about lining up the decision maker with their, may have the same financial interest in saying no medical necessity. What I would have thought would have been the way one would argue this case from your perspective is the beauty of external review is we delink this, and there should be more discretion when you have external review because you get out from under this problem that the insurance company is incentivized to only allow lower coverage, but it's not exactly the way you've been presenting this case, so I feel like I must be missing something. And this is really a question for both sides. To be clear, we were talking about whether or not the standard of review is altered by the external review, not whether as a matter of substance and materiality we take away the whole concern about financial conflict of interest. And there also, by the way, is nothing in the record to suggest that IOP would have been less expensive than PHP or that there was any financial issue at all with respect to that. But taking your point, I agree. The fact that there was an external review done here by somebody who wasn't attached at all to Oxford is a strong part of our case on the merits. We were talking about the arbitrary and capricious point. It speaks to the reasonableness, the reasonable basis for the determination. Explain that I'm not missing something. Thank you. No, you're not. You're not, but it goes to a different issue that we just haven't reached, and my time is up. I got it. I got it. Thank you, Mr. Bernstein. Thank you very much. Ms. Hopkins? Yes. First, I'd like to just point out that I think it's reasonably clear, if not completely clear, that when this court had this case previously, it didn't decide whether, it didn't address whether the decision of the external reviewer was binding on Oxford. It remanded for consideration of the standard of review. It was addressing a very different issue, which was whether that decision was binding on Alexandra and binding on this court, and said that it wasn't, and it pointed and referred to New York State law, and was really convinced that that was the place to look for the answer. If one looks at New York State law here, it's clear that the answer is that the external review is binding on Oxford and not binding, as this court previously held, on the insured. And that's not having it both ways. It's because this is a protective regime. Both the New York State law and ERISA are protective regimes, the primary goal of which is to protect the plan participant or the insured, who here are the same person, Alexandra. So it just stands to reason that the remedies, as the New York law says, are cumulative for the insured. So therefore, and there are multiple indications that this was meant to be binding on Oxford and should be binding on Oxford. Not only did the plan document say that, not only does the New York law require it, but as this court pointed out in its previous decision, there was an agreement signed by Alexandra saying the same thing, saying that she acknowledged that the external review was binding, but that it didn't preclude her from challenging any denial of benefits in court. So therefore, I think that issue was left open by this court, but I think the answer to it is abundantly clear, and that's that the decision was binding on Oxford, was made by an external reviewer that wasn't granted discretion, and therefore, that the background de novo standard of review is applicable. And yes. How do you respond to my point? It seems like there should be more discretionary when they get an outside party. Well, I think that whether it's de novo review or arbitrary and capricious review or abuse of discretion review doesn't turn on whether there's a conflict, and it never has. It turns on whether the plan document grants this kind of discretion, and that's really the only issue. You look to the plan document, you see whether there's a grant of discretion and whether there was an exercise of that discretion. Here there was a grant of discretion, but not to the party that exercised that discretion. Therefore, I think the only reasonable answer is that you get to de novo review in this case, and that that's a completely fair result. Thank you, counsel.